**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, | ) | |
| ELI LILLY EXPORT S.A., AND | ) | |
| ACRUX DDS PTY LTD., | ) | |
| | ) | Case No. 1:13-cv-0851 SEB-DKL |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PERRIGO COMPANY, | ) | |
| PERRIGO ISRAEL PHARMACEUTICALS LTD., | ) | |
| ACTAVIS LABORATORIES UT, INC. | ) | |
| (f/k/a WATSON LABORATORIES, INC.), AND | ) | |
| AMNEAL PHARMACEUTICALS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PERRIGO'S MOTION TO COMPEL**
**DISCOVERY RESPONSIVE TO INTERROGATORY NOS. 8-11, 13, AND 16**
**AND REQUESTS FOR PRODUCTION NOS. 1, 3-17, 21-25, 42, 43, AND 80**

## EXHIBIT LIST

| Exhibit No. | Description |
|---|---|
| 1 | Plaintiffs Eli Lilly and Company's, Eli Lilly Export S.A.'s, and Acrux DDS Pty Ltd's Supplemental Objections and Answers to Defendant Perrigo Israel Pharmaceuticals Ltd's Rule 33 Interrogatories (No. 7) (dated 6/30/15) |
| 2 | Plaintiffs Eli Lilly and Company's, Eli Lilly Export S.A.'s, and Acrux DDS Pty Ltd.'s Third Supplemental Objections and Answers to Defendant Perrigo Israel Pharmaceuticals Ltd.'s Rule 33 Interrogatories (No. 7) (dated 7/31/15) |
| 3 | Plaintiffs Eli Lilly and Company's, Eli Lilly Export S.A.'s, and Acrux DDS Pty Ltd's Supplemental Objections and Answers to Defendant Perrigo Israel Pharmaceuticals Ltd's Rule 33 Interrogatories (Nos. 6, 8-11, 13) (dated 7/7/15) |
| 4 | Excerpts of Plaintiffs Eli Lilly and Company's, Eli Lilly Export S.A.'s, and Acrux DDS Pty Ltd's Objections and Answers to Defendant Perrigo Israel Pharmaceuticals Ltd's Third Set of Rule 33 Interrogatories (Nos. 16-19) (dated 6/11/15) |
| 5 | Excerpts of Plaintiffs Eli Lilly Company's, Eli Lilly Export S.A.'s and Acrux DDS Pty Ltd's Objections and Responses to Defendant Perrigo Israel Pharmaceuticals Ltd.'s First Set of Requests for Production of Documents and Things (Nos. 1-69) (dated 10/21/13) |
| 6 | Excerpts of Plaintiffs Eli Lilly and Company's, Eli Lilly Export S.A.'s, and Acrux DDS Pty Ltd's Objections and Responses to Defendant Perrigo Israel Pharmaceuticals Ltd's Third Set of Requests for Production of Documents and Things (Nos. 72-80) (dated 6/11/15) |
| 7 | Letter to L. Masurovsky from A. Riechers dated 5/8/15 (re: interrogatories) |
| 8 | Letter to L. Masurovsky from A. Riechers dated 5/8/15 (re: document production) |
| 9 | Email to L. Masurovsky from R. Teigen dated 5/21/15 |
| 10 | Email to L. Masurovsky from R. Teigen dated 5/26/15 |
| 11 | Letter to A. Riechers from L. Masurovsky dated 5/29/15 (redacted) |
| 12 | Letter to L. Masurovsky from A. Riechers dated 6/1/15 |
| 13 | Letter to L. Masurovsky from A. Riechers dated 6/5/15 |
| 14 | Letter to L. Masurovsky from A. Riechers dated 6/11/15 |
| 15 | Letter to A. Riechers from L. Masurovsky dated 6/12/15 |
| 16 | Letter to L. Masurovsky from A. Riechers dated 6/22/15 |
| 17 | Letter to L. Masurovsky from A. Riechers dated 6/24/15 |
| 18 | Letter to K. Mathas, C. Siwik, A. Fitzpatrick et al. from L. Masurovsky dated 6/30/15 (redacted) |
| 19 | Email to L. Masurovsky et al. from R. Teigen dated 6/30/15 |
| 20 | Letter to L. Masurovsky from A. Riechers dated 7/7/15 |
| 21 | Letter to L. Masurovsky from K. Mathas dated 7/7/15 (redacted) |
| 22 | Letter to L. Masurovsky from A. Riechers dated 7/9/15 |
| 23 | Letter to L. Masurovsky from A. Riechers dated 7/10/15 |
| 24 | Letter to A. Riechers from L.S. Burwell dated 7/13/15 |
| 25 | Email to L. Masurovsky et al. from A. Riechers dated 7/14/15 |
| 26 | Email to L. Masurovsky et al. from R. Teigen dated 7/14/15 |

| Exhibit No. | Description |
|---|---|
| 27 | Letter to A. Riechers from L.S. Burwell dated 7/15/15 |
| 28 | Letter to A. Riechers from L.S. Burwell dated 7/16/15 |
| 29 | Letter to L. Masurovsky from K. Mathas dated 7/16/15 (redacted) |
| 30 | Letter to L.S. Burwell from A. Riechers dated 7/22/15 |
| 31 | Letter to A. Riechers from L.S. Burwell dated 7/23/15 |
| 32 | Letter to A. Riechers from L.S. Burwell dated 7/24/15 |
| 33 | Letter to L.S. Burwell from A. Riechers dated 7/28/15 |
| 34 | Letter to A. Riechers from L. Masurovsky dated 7/9/15 (redacted) |
| 35 | Excerpts of Plaintiffs Eli Lilly and Company's, Eli Lilly Export S.A.'s, and Acrux DDS Pty Ltd's Supplemental Objections and Answers to Defendant Perrigo Israel Pharmaceuticals Ltd's Rule 33 Interrogatories (Nos. 7 and 14) (dated 9/24/14) |

## **TABLE OF CONTENTS**

I.      INTRODUCTION. ............................................................................................... 1

II.     BACKGROUND/STATEMENT OF FACTS. .................................................... 1

III.    ARGUMENT. ...................................................................................................... 6

      A.      Perrigo Is Entitled To Discovery Relevant To Secondary Considerations
            Of Non-Obviousness. ............................................................................... 6

      B.      Plaintiffs Should Produce Information And Documents Responsive To
            Interrogatory Nos. 8-11, 13, And 16 And Requests For Production Nos. 1,
            3-17, 21-25, And 80 As Relevant To At Least The Secondary
            Considerations Plaintiffs Affirmatively Assert. ...................................... 9

      C.      Plaintiffs Should Produce Complete Versions Of The IND And NDA
            Because They Are Relevant To The Validity Of The Patents-In-Suit,
            Including At Least The Secondary Considerations Plaintiffs Affirmatively
            Assert. .................................................................................................... 15

      D.      Plaintiffs Have Not Shown, And Cannot Show, That It Would Be Overly
            Burdensome To Produce The Requested Discovery. ............................. 17

IV.     CONCLUSION. ................................................................................................. 18

## **TABLE OF AUTHORITIES**

### **Federal Cases**

*Ashland Oil v. Delta Resins & Refractories*,
    776 F.2d 281 (Fed. Cir. 1985) ................................................. 12

*Asyst Techs., Inc. v. Emtrak, Inc.*,
    544 F.3d 1310 (Fed. Cir. 2008) ........................................ 11, 13

*Becker v. City of Evansville*,
    No. 12-182, 2014 WL 1706390 (S.D. Ind. Apr. 29, 2014) ...................... 8

*Bentley v. Sunset House Distrib. Corp.*,
    359 F.2d 140 (9th Cir. 1966) ................................................ 12

*Donnelly v. NCO Fin. Sys., Inc.*,
    263 F.R.D. 500 (N.D. Ill. 2009) ......................................... 8, 18

*E.E.O.C. v. New Indianapolis Hotels*,
    No. 10-1234, 2011 WL 2912794 (S.D. Ind. July 15, 2011) ..................... 8

*Ecolochem, Inc. v. Southern Calif. Edison*,
    No. 92-3436, 1998 WL 1182000 (C.D. Cal. Sept. 18, 1998) ................... 14

*Ecolochem, Inc. v. Southern Calif. Edison*,
    227 F.3d 1361 (Fed. Cir. 2000) ............................................. 14

*Eli Lilly & Co. v. Wockhardt Ltd.*,
    No. 08-1547, 2010 WL 2605855 (S.D. Ind. June 22, 2010) ............... 16, 18

*Executive Mgmt. Servs. v. Fifth Third Bank*,
    No. 13-582, 2014 WL 4680900 (S.D. Ind. Sept. 22, 2014) ............ 8, 16, 17

*Executive Mgmt. Servs. v. Fifth Third Bank*,
    No. 13-582, 2014 WL 5529895 (S.D. Ind. Nov. 3, 2014) ................. 8, 17

*Green v. Monarch Recovery Mgmt.*,
    No. 13-418, 2014 WL 1631825 (S.D. Ind. Apr. 24, 2014) ............... 8, 16

*Henkel Corp. v. Coral, Inc.*,
    754 F. Supp. 1280 (N.D. Ill. 1990) ........................................ 13

*Hitachi Koki Co. v. Doll*,
    620 F. Supp. 2d 4 (D.D.C. 2009) ........................................... 12

*Iron Grip Barbell Co. v. USA Sports*,
    392 F.3d 1317 (Fed. Cir. 2004) ........................................... 6, 7

*K-Tec, Inc. v. Vita-Mix Corp.*,
    729 F. Supp. 2d 1312 (D. Utah 2010) ........................................................ 12

*Lewart Co. v. Acco Int'l*,
    428 F. Supp. 258 (N.D. Ill. 1976) ............................................................. 12

*Maple Creek Commons Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
    No. 08-475, 2012 WL 14022 (S.D. Ind. Jan. 4, 2012) ........................... 8, 16

*MeadWestVaco Corp. v. Rexam Beauty & Closures*,
    731 F.3d 1258 (Fed. Cir. 2013) ................................................................ 13

*Menendez v. Wal-Mart Stores East L.P.*,
    No. 10-53, 2010 WL 3038440 (N.D. Ind. Aug. 4, 2010) ....................... 8, 17

*Mintz v. Dietz & Watson, Inc.*,
    679 F.3d 1372 (Fed. Cir. 2012) ............................................................ 7, 13

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) ............................................................ 7, 11

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry.*,
    357 F.3d 1319 (Fed. Cir. 2004) ............................................................ 7, 12

*Novelty, Inc. v. Mountain View Mktg.*,
    265 F.R.D. 370 (S.D. Ind. 2009) ......................................................... 14, 16

*Ohio Willow Wood Co. v. Alps South, LLC*,
    735 F.3d 1333 (Fed. Cir. 2013) ................................................................ 11

*OSRAM Sylvania v. Am. Induction Techs.*,
    701 F.3d 698 (Fed. Cir. 2012) ................................................................... 7

*Pfizer Inc. v. Apotex Inc.*,
    731 F. Supp. 2d 754 (N.D. Ill. 2010) ................................................... 14, 16

*Pro-Mold & Tool Co. v. Great Lakes Plastics*,
    75 F.3d 1568 (Fed. Cir. 1996) ................................................................... 6

*PTS Labs v. Abbot Labs.*,
    No. 99-2402, 2000 WL 521722 (N.D. Ill. Mar. 17, 2000) ....................... 12

*Rogers v. Baxter Int'l Inc.*,
    No. 04-6476, 2007 WL 7263294 (N.D. Ill. Feb. 9, 2007) ......................... 8

*Schroeder v. Menard, Inc.*,
    No. 13-451, 2014 WL 3084725 (N.D. Ind. July 7, 2014) ......................... 8

*Sonoco Prods. v. Mobil Oil Corp.*,
  No. 87-2874, 1989 WL 231323 (D.S.C. Apr. 4, 1989) ............................................................ 12

*Structural Rubber Prods. v. Park Rubber Co.*,
  No. 79-1223, 1986 WL 12326 (N.D. Ill. Oct. 24, 1986) ........................................................... 12

*Symons Int'l Group v. Cont'l Cas. Co.*,
  No. 01-799, 2015 WL 4392933 (S.D. Ind. July 15, 2015) ......................................................... 8

*Transocean Offshore Deepwater Drilling v. Maersk Contractors USA*,
  617 F.3d 1296 (Fed. Cir. 2010) ................................................................................................ 7

*W.L. Gore & Assocs. v. Garlock, Inc.*,
  721 F.2d 1540 (Fed. Cir. 1983) .............................................................................................. 13

## Federal Statutes

35 U.S.C. § 103 ....................................................................................................................... 1, 2

## Federal Rules

FED. R. CIV. P. 26(b)(1) ............................................................................................................ 7

FED. R. CIV. P. 37(a)(3) ............................................................................................................ 9

## I.      INTRODUCTION.

Perrigo filed an Abbreviated New Drug Application ("ANDA") with the U.S. FDA seeking approval to market a generic version of Plaintiffs' Axiron® drug product.  In an effort to keep Perrigo's lower-priced generic product off of the market, Plaintiffs have sued Perrigo for alleged infringement of five patents.  Plaintiffs cannot use these five patents to block Perrigo's market entry because, *inter alia*, each of these patents is invalid for obviousness under 35 U.S.C. § 103.  Plaintiffs seek to avoid a declaration of invalidity under § 103 by attempting to rely on evidence of certain so-called "secondary considerations" of non-obviousness.  By seeking to rely on secondary considerations, Plaintiffs have elected to make discovery relating to secondary considerations relevant and discoverable in this case.

Given Plaintiffs' positions, Perrigo has, quite naturally, sought discovery from Plaintiffs relating to secondary considerations.  And despite having injected such issues into the case, Plaintiffs refuse to provide relevant discovery regarding the secondary considerations, arguing such discovery is irrelevant and would be unduly burdensome to produce.  This simply is not the case.  Plaintiffs cannot, as they wish to do here, seek to rely on various secondary considerations in an effort to save their patents, but turn around and refuse to provide Perrigo with discovery that could assist Perrigo in rebutting Plaintiffs' arguments.  Plaintiffs have not proven, and cannot prove, that the discovery Perrigo seeks is irrelevant or would be unduly burdensome to produce.  For the reasons set forth below, the Court should order Plaintiffs to produce the discovery Perrigo has requested.

## II.     BACKGROUND/STATEMENT OF FACTS.

Plaintiffs sued Perrigo for patent infringement, alleging that Perrigo's generic Axiron® product would infringe certain patents.  (Dkt. Entry No. 1).  Plaintiffs subsequently sued two other companies, who, like Perrigo, seek FDA approval to market lower-priced generic

1

versions of Axiron®.  In addition to suing additional companies, Plaintiffs have amended their complaint to assert additional patents.  (Dkt. Entry Nos. 86, 128).  At present, Plaintiffs allege that Perrigo infringes certain claims of five patents: U.S. Patent Nos. 8,177,449 ("the '449 patent"); 8,419,307 ("the '307 patent"); 8,435,944 ("the '944 patent"); 8,807,861 ("the '861 patent"); and 8,993,520 ("the '520 patent").  (Dkt. Entry No. 128).  Perrigo's response includes, *inter alia*, counterclaims seeking a declaration that these five patents are invalid because they are obvious over the prior art under 35 U.S.C. § 103.  (Dkt. Entry No. 134).

When an alleged infringer asserts obviousness under 35 U.S.C. § 103, patentees routinely respond that evidence of so-called "secondary considerations" of non-obviousness precludes a finding of obviousness under § 103.  The case law recognizes a variety of secondary considerations of non-obviousness that a patentee may seek to prove in an effort to stave off an obviousness finding.  Such considerations include "commercial success" of the alleged invention, "long-felt but unmet need" for the alleged invention, and "unexpected results" due to the alleged invention.  In addition to proving the existence of each secondary consideration, the patentee must also prove the existence of a "nexus" between the alleged claimed invention and the evidence of each secondary consideration.

Because patentees almost always allege that one or more secondary considerations precludes an obvious finding, Perrigo propounded multiple Rule 33 interrogatories and Rule 34 requests for production requiring Plaintiffs to disclose which secondary considerations they will attempt to rely upon, provide the evidence Plaintiffs believe support their position, and provide discovery that would assist Perrigo in rebutting Plaintiffs' secondary considerations and nexus assertions.  Perrigo's Interrogatory No. 7, for instance, asks Plaintiffs, *inter alia*, to identify the secondary considerations of non-obviousness upon which they will rely in this case.  (*See, e.g.,*

Ex. 1 at 2).   Other interrogatories and document requests seek information and documents relevant to secondary considerations, including the required nexus.   (*See, e.g.*, Ex. 3 at Interrogatory Nos. 8-11 and 13; Ex. 4 at Interrogatory No. 16; Ex. 5 at Request Nos. 1-17 and 21-25; Ex. 6 at Request No. 80).

Plaintiffs initially failed to provide any substantive interrogatory responses and refused to agree to produce documents responsive to the majority of these requests.   On September 24, 2014, Plaintiffs provided a supplemental response to Interrogatory No. 7 with respect to the '944 patent only.  (Ex. 35 at 3-4).  On June 30, 2015, twenty-one months after receiving Perrigo's first set of written discovery requests, after receiving multiple discovery letters from Perrigo over several months, and after the parties met and conferred on the issue, Plaintiffs substantively supplemented their response to Interrogatory No. 7 with respect to the '944 and '520 patents. (*See, e.g.*, Exs. 1, 7, 9-12, 14, 16).  There, Plaintiffs stated that "with respect to at least the '944 and '520 patents, they *currently* intend to rely on objective indicia of nonobviousness including *at least* unexpected results, long-felt but unresolved need, and teaching away by the prior art." (Ex. 1 at 3 (emphasis added)).   A month later, Plaintiffs finally supplemented their response to Interrogatory No. 7 with respect to the remainder of the patents asserted against Perrigo, similarly stating that "with respect to at least the '307, '861, and '449 patents, they *currently* intend to rely on *at least* the objective indicia of unexpected results, long-felt but unresolved need, and teaching away by the prior art."  (Ex. 2 at 4 (emphasis added)).  These responses are far from definitive.  They also stated that "Plaintiffs further answer that they will not rely on commercial success."  (Ex. 1 at 4; Ex. 2 at 4).  Plaintiffs also contend that Axiron® is a commercial embodiment of, and is covered by, the asserted claims of the patents-in-suit, and

indicate that they will seek to use certain information about Axiron® to support at least some of their secondary considerations.

According to Plaintiffs, much of the discovery Perrigo has requested is irrelevant to the specific secondary considerations Plaintiffs have identified, and thus, producing such discovery would be overly burdensome.  (*See, e.g.*, Ex. 3 at Interrogatory Nos. 8-11 and 13; Ex. 4 at Interrogatory No. 16; Ex. 5 at Request Nos. 2-17 and 21-25; Exs. 7, 8, 23, 27, and 34).  According to Plaintiffs, the discovery Perrigo seeks relates solely to the secondary consideration of "commercial success," upon which they purport not to be relying.  Respectfully, Plaintiffs are mistaken and cannot withhold the requested discovery from Perrigo.

In an effort to avoid seeking the Court's assistance, Perrigo explained to Plaintiffs how the discovery Plaintiffs have refused to provide is relevant to the secondary considerations Plaintiffs have identified in response to Interrogatory No. 7, even if such discovery would also be relevant to commercial success.  (*See, e.g.*, Exs. 7, 8, 23 and 30).  As Perrigo explained, and as noted above, Plaintiffs allege that Axiron® is a commercial embodiment of, and is covered by, the asserted claims of the patents-in-suit.  In order to rely on Axiron® as embodying the alleged invention, the law requires Plaintiffs to provide evidence that Axiron® meets each limitation of each asserted claim of each patent-in-suit.  (*See, e.g.*, Exs. 7-8, 17).  Consequently, Perrigo requested the Investigational New Drug Application ("IND") and New Drug Application ("NDA") for Axiron®, as such documents contain information about Axiron®, including statements and representations that Plaintiffs made about Axiron®.  (*See, e.g.*, Ex. 5 at Request Nos. 42-43; Exs. 8, 11-13, 15-16, 18-20, and 26).  Despite agreeing to produce the IND and NDA, both of which were submitted to FDA in order to obtain approval for Axiron®, Plaintiffs redacted or withheld relevant portions of these documents, including clinical studies concerning

4

Axiron® and other information concerning the formulation development and the applicator used to apply Axiron®.  (*See, e.g.*, Exs. 16, 18-20, 28, 30, 32-33).  Plaintiffs assert that the redacted and withheld information is commercially sensitive information, is not relevant to the issues in this case, and need not be produced.  (*See, e.g.*, Exs. 28 and 32).  But given their attempt to rely on Axiron® to prove secondary considerations, Plaintiffs have made information in the IND and NDA about Axiron® potentially relevant to non-obviousness, and have certainly made such information discoverable.  (*See, e.g.*, Exs. 30 and 33).   Yet, Plaintiffs refuse to produce this information.

Further, because Plaintiffs seek to rely on Axiron® (which includes its attributes, properties, sales, and the like) as evidence of secondary considerations, the law also requires Plaintiffs to prove that there is a "nexus" between the alleged patented features of Axiron® and the evidence of secondary considerations.  Much of the information Perrigo seeks relates to whether the required nexus between Axiron® and the alleged evidence of secondary considerations actually exists.

Moreover, aside from establishing nexus (or lack thereof), the information Perrigo seeks—such as information concerning sales, market share, sales expectations or projections, competing products, physician and patient surveys, marketing messages, and advertising efforts for Axiron®—is relevant to, at the very least, whether there actually was a long-felt need for the alleged invention, and if such a need existed, whether Axiron® actually fulfilled that need. Despite stating that they seek to rely on long-felt but unmet need, and despite Perrigo explaining that the discovery it seeks is thus relevant, Plaintiffs refuse to provide this discovery.

Still further, even though Plaintiffs have stated in an interrogatory response that they will not seek to rely on commercial success, they have not foreclosed the possibility of attempting to

do so at a later date.  Plaintiffs have, for example, expressly refused to stipulate to the Court that they will not, at a later date, seek to rely on commercial success.  (Ex. 31).  Similarly, Plaintiffs have not foreclosed the possibility of attempting to rely on any other as-yet unidentified secondary considerations, as fact and expert discovery continues.  Given Plaintiffs' discovery posture, to withhold the discovery Perrigo seeks would unduly prejudice Perrigo, and doing so finds no support in the relevant case law.

Perrigo has met and conferred with Plaintiffs concerning these issues numerous times over the course of several months, but the parties have been unable to resolve their disputes.[1] Unfortunately, Plaintiffs have left Perrigo with no choice but to seek the Court's assistance.

## III.   ARGUMENT.

### A.   Perrigo Is Entitled To Discovery Relevant To Secondary Considerations Of Non-Obviousness.

In patent infringement cases, patentees often seek to fend off an obviousness finding by seeking to introduce evidence of so-called secondary considerations of non-obviousness.  *See, e.g.*, *Iron Grip Barbell Co. v. USA Sports*, 392 F.3d 1317, 1323-24 (Fed. Cir. 2004); *Pro-Mold & Tool Co. v. Great Lakes Plastics*, 75 F.3d 1568, 1572 (Fed. Cir. 1996).  Secondary considerations of non-obviousness include things such as the commercial success of the alleged invention, whether the alleged invention satisfied a long-felt but unsolved need, whether the

---

[1] Pursuant to S.D. Ind. L.R. 37-1(b), Perrigo states as follows:  The parties first met and conferred via teleconference concerning, *inter alia*, Plaintiffs' responses to Interrogatory Nos. 7, 8-11, and 13, and the production of the IND and NDA, on May 28, 2015 at 3:30 pm ET.  Laura Masurovsky participated for Plaintiffs, and Alice Riechers and Robert Teigen participated for Perrigo.  (*See, e.g.*, Exs. 11-12, 14, 16, 22, 23).  The parties further met and conferred via teleconference concerning, *inter alia*, Interrogatory Nos. 1, 6, 7, 8-11, 13, and 16, and Requests for Production Nos. 1, 2, 3-17, 21-25, 42, 43, and 80, including Plaintiffs' incomplete production of the IND and NDA, on July 21, 2015 at 10:30 am ET.  L. Scott Burwell and Jessica Marks participated for Plaintiffs, and Alice Riechers and Robert Teigen participated for Perrigo.  (*See, e.g.*, Exs. 23-28 and 30-33).  Despite a good faith effort, the parties were unable to reach agreement on the issues set forth herein, and are at an impasse, as the parties have acknowledged.  (*See, e.g.,* Exs. 30-33).

alleged invention yielded unexpected results, and whether the prior art teaches away from the alleged invention. *See, e.g.*, *Iron Grip*, 392 F.3d at 1323-25; *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012); *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry.*, 357 F.3d 1319, 1339 (Fed. Cir. 2004). While the law does not require patentees to raise secondary considerations in response to an obviousness defense, they almost always seek to do so, and when they do, the Federal Circuit has stated that courts must consider evidence of whether secondary considerations actually exist. *Transocean Offshore Deepwater Drilling v. Maersk Contractors USA*, 617 F.3d 1296, 1305 (Fed. Cir. 2010); *Mintz*, 679 F.3d at 1379; *OSRAM Sylvania v. Am. Induction Techs.*, 701 F.3d 698, 708-09 (Fed. Cir. 2012). Additionally, when a patentee seeks to rely on secondary considerations, the patentee must establish a nexus between the secondary considerations evidence and the merits of the invention. *See, e.g.*, *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327-28 (Fed. Cir. 2008) ("[a] nexus between the merits of the claimed invention and evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision" (citation omitted)). And where, as here, a patentee intends to rely upon the attributes, properties, or sales of an alleged commercial embodiment, the patentee must first prove that the product actually embodies the limitations of the asserted claims. It must then prove that the alleged evidence of secondary considerations is linked to the alleged patented features of the commercial embodiment, and is not due to some other factor (such as advertising efforts) or a non-patented feature of the product. *Id.*

Perrigo is entitled to any non-privileged discovery from Plaintiffs that is relevant to Perrigo's defenses, which includes discovery that rebuts Plaintiffs' secondary considerations arguments and thus supports Perrigo's § 103 obviousness defenses. *See* FED. R. CIV. P. 26(b)(1);

*E.E.O.C. v. New Indianapolis Hotels*, No. 10-1234, 2011 WL 2912794, at *2 (S.D. Ind. July 15, 2011).   In fact, as the parties resisting discovery, Plaintiffs bear the burden to show with specificity why the requested discovery is improper.  *See Executive Mgmt. Servs. v. Fifth Third Bank*, No. 13-582, 2014 WL 5529895, at *3 (S.D. Ind. Nov. 3, 2014); *Schroeder v. Menard, Inc.*, No. 13-451, 2014 WL 3084725, at *4 (N.D. Ind. July 7, 2014); *Becker v. City of Evansville*, No. 12-182, 2014 WL 1706390, at *1 (S.D. Ind. Apr. 29, 2014); *Symons Int'l Group v. Cont'l Cas. Co.*, No. 01-799, 2015 WL 4392933, at *2 (S.D. Ind. July 15, 2015).   General assertions of burdensomeness or hardship will not suffice to defeat a motion to compel.  *See Executive Mgmt.*, 2014 WL 5529895, at *3; *Symons*, 2015 WL 4392933, at *2; *Maple Creek Commons Homeowners Ass'n v. State Farm Fire & Cas. Co.*, No. 08-475, 2012 WL 14022, at *1 (S.D. Ind. Jan. 4, 2012).   Indeed, where, as here, the discovery sought appears relevant, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Menendez v. Wal-Mart Stores East L.P.*, No. 10-53, 2010 WL 3038440, at *1 (N.D. Ind. Aug. 4, 2010) (citation omitted); *see also Executive Mgmt. Servs. v. Fifth Third Bank*, No. 13-582, 2014 WL 4680900, at *2 (S.D. Ind. Sept. 22, 2014) (same).[2]

---

[2]   As this Court knows, when ruling on motions to compel discovery, "courts have broad discretion and have consistently adopted a liberal interpretation of the discovery rules in order to aid the search for truth."   *Executive Mgmt.*, 2014 WL 5529895, at *3 (citation and internal quotation marks omitted); *see also Green v. Monarch Recovery Mgmt.*, No. 13-418, 2014 WL 1631825, at *4 (S.D. Ind. Apr. 24, 2014) ("[T]here is a strong public policy in favor of disclosure of relevant materials.") (citation omitted); *Rogers v. Baxter Int'l Inc.*, No. 04-6476, 2007 WL 7263294, at *1 (N.D. Ill. Feb. 9, 2007) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.   To that end, either party may compel the other to disgorge whatever facts he has in his possession.") (citation omitted); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 503 (N.D. Ill. 2009) (same); *Schroeder*, 2014 WL 3084725, at *6 ("The Court's primary goal in ruling on discovery matters should be to facilitate the parties . . .

As set forth above, Plaintiffs have injected secondary considerations of non-obviousness into this case in response to Perrigo's obviousness defense.  The discovery Perrigo seeks is relevant; that is, reasonably calculated to lead to the discovery of admissible evidence concerning at least the secondary considerations of non-obviousness Plaintiffs have asserted in this case and the required nexus relating thereto.  As discussed further below, Plaintiffs have not shown with requisite specificity that the burden of producing the requested discovery outweighs its relevance and the ordinary presumption of broad disclosure.  Perrigo is thus entitled to discovery that may rebut Plaintiffs' secondary considerations evidence, including whether a nexus between alleged evidence of secondary considerations and the claimed invention actually exists, and Rule 37(a) authorizes this Court to compel Plaintiffs to produce the information and documents Perrigo seeks in this motion.  *See* FED. R. CIV. P. 37(a)(3).

> **B.     Plaintiffs Should Produce Information And Documents Responsive To Interrogatory Nos. 8-11, 13, And 16 And Requests For Production Nos. 1, 3-17, 21-25, And 80 As Relevant To At Least The Secondary Considerations Plaintiffs Affirmatively Assert.**

Plaintiffs refuse to produce certain information and documents because, they assert, such discovery is irrelevant to the secondary considerations they finally identified in their discovery responses.  Under the relevant case law, Plaintiffs are mistaken.  Documents and information responsive to Interrogatory Nos. 8-11, 13 and 16, and Requests for Production Nos. 1, 3-17, 21-25 and 80, are discoverable at least because they could lead to the discovery of admissible evidence regarding the secondary considerations that Plaintiffs have affirmatively stated they are asserting—including long-felt but unmet need, unexpected results, and teaching away by the prior art—and the required nexus.  These requests seek the following documents or information:

---

obtain[ing] the fullest possible knowledge of the issues and facts before trial.") (citations and internal quotation marks omitted).

- Information relating to Plaintiffs' assertion that Axiron® embodies each limitation of each asserted claim of each patent asserted against Perrigo (Ex. 4 at Interrogatory No. 16; Ex. 5 at Request No. 15);

- Sales, prescription, and profit information for Axiron® (Ex. 3 at Interrogatory No. 9; Ex. 5 at Request Nos. 3, 11, 21);

- Sales forecasts for Axiron® and assessments of the market and/or competition for Axiron® (Ex. 3 at Interrogatory No. 10; Ex. 5 at Request Nos. 3, 5-10, 16-17);

- Patient and physician surveys, marketing studies, marketing plans, marketing messages, advertisements, sales and marketing strategies, and lifecycle management plans for Axiron® (Ex. 3 at Interrogatory No. 11; Ex. 5 at Request Nos. 3, 4, 14, 24-25);

- Pricing information for Axiron® (Ex. 5 at Request No. 23);

- Promotional, advertising, and marketing expenditures for Axiron® (Ex. 3 at Interrogatory No. 8; Ex. 5 at Request Nos. 3, 13, 22); and

- Research and development costs associated with Axiron® (Ex. 3 at Interrogatory No. 13; Ex. 5 at Request No. 12).[3]

Plaintiffs have refused to provide any of the information or documents requested above. According to Plaintiffs, such discovery is relevant only to the secondary consideration of commercial success, which again, is an issue that Plaintiffs have refused to stipulate they will refrain from asserting at a later date. But such documents and information are relevant to at least the other secondary considerations Plaintiffs have affirmatively stated they are relying on in this

---

[3] Plaintiffs do not dispute that discovery responsive to these requests is relevant to the secondary consideration of commercial success. Rather, they argue such discovery is irrelevant to any other secondary considerations. Plaintiffs also do not dispute that the discovery Perrigo seeks is responsive to at least these discovery requests. Rather, they argue only that such discovery is irrelevant to the issues in the case. It should also be noted that Plaintiffs agreed to produce documents (subject to their objections) in response to Perrigo's Request Nos. 1 and 80. The more specific categories of documents called for by Request Nos. 3-17 and 21-25 also are responsive to Request Nos. 1 and 80, which seek information relevant to all secondary considerations being asserted (Ex. 5 at Request No. 1) and information Plaintiffs considered when responding to Perrigo's Interrogatories (Ex. 6 at Request No. 80).

case.  For at least this reason, Defendant Watson, too, seeks similar discovery from Plaintiffs. (*See, e.g.*, Exs. 21 and 29).

First, as noted, Plaintiffs assert that Axiron® is an alleged embodiment of the asserted claims of the patents-in-suit, and they seek to use information about Axiron® to support their secondary considerations assertions.  Thus, Plaintiffs must prove that Axiron® actually embodies the asserted claims of the patents-in-suit, and must prove a nexus between the patented features of Axiron® and the alleged evidence of secondary considerations.  *See, e.g.*, *Muniauction*, 532 F.3d at 1327-28; *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013); *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008).  Much of the information sought by the requests described above relates to Axiron® and its properties, attributes and the like.  Consequently, Perrigo is entitled to such discovery, as, at the very least, it could lead to admissible evidence regarding whether a nexus between any evidence of secondary considerations and the alleged invention of the patents-in-suit actually exists.

Second, the discovery that Perrigo seeks is relevant to, at the very least, whether (1) a long-felt but unmet need for the alleged inventions actually existed, and (2) whether Axiron® (the alleged embodiment of the invention) actually fulfilled such a need.  For example:

- Information concerning statements from patients and physicians, such as marketing studies and physician and patient surveys, could bear on whether there was a demand or long-felt need for the alleged patentable features of Axiron®, or whether Axiron® is being prescribed because of its alleged patentable features or for some other reason;

- Information concerning the competition for Axiron®, such as market share information, sales projections, competitive analysis, and the like could bear on whether there was a long-felt need or demand for the alleged patented features of Axiron® in the marketplace, and/or whether any need or demand was or is being met by competing products;

- Information concerning Axiron®'s sales performance, including whether it displaced competing products in the market, captured significant market

11

share, or met sales and market share expectations, could bear on whether there
was a need or demand for Axiron® and/or whether Axiron® fulfills a need in
the market; and

- Information concerning advertising and marketing messages for Axiron®
  could bear on whether it is being touted (or has been touted) as a solution for
  any purported long-felt need, whether it is being (or has been) marketed for its
  alleged patented features, or whether it is being (or has been) marketed for
  (and thus whether sales were due to) other features not attributable to the
  alleged invention.

Courts routinely look to the kind of information Perrigo seeks here to determine whether
a long-felt but unmet need for the alleged invention existed, and whether the commercial
embodiment of the invention actually met any such need.  *See, e.g.*, *Nat'l Steel Car*, 357 F.3d at
1339-40 (lack of customer demand relevant to existence and satisfaction of long-felt need);
*Hitachi Koki Co. v. Doll*, 620 F. Supp. 2d 4, 30-32 (D.D.C. 2009) (considering marketing
surveys, customer interest in patented features, and sales compared to competing products, in
determining existence and satisfaction of long-felt need); *PTS Labs v. Abbot Labs.*, No. 99-2402,
2000 WL 521722, at *6 (N.D. Ill. Mar. 17, 2000) (modest sales and market share "undercuts any
contention of fulfilling a long felt need"); *Sonoco Prods. v. Mobil Oil Corp.*, No. 87-2874, 1989
WL 231323, at *8 (D.S.C. Apr. 4, 1989) (no long-felt need when other products without patented
features were successful in the relevant marketplace), *vacated in part on other grounds*, 895 F.2d
1420 (Fed. Cir. 1990); *Structural Rubber Prods. v. Park Rubber Co.*, No. 79-1223, 1986 WL
12326, at *3-*5 (N.D. Ill. Oct. 24, 1986) (evidence that previous products in the market satisfied
needs in the industry may demonstrate absence of long-felt need for patented product); *Bentley v.
Sunset House Distrib. Corp.*, 359 F.2d 140, 145 n.3 (9th Cir. 1966) ("[T]he limited sales in this
case show no such long-felt need."); *Ashland Oil v. Delta Resins & Refractories*, 776 F.2d 281,
307 (Fed. Cir. 1985) (customer opinions concerning features of commercial embodiment
relevant to whether there was a long-felt need); *Lewart Co. v. Acco Int'l*, 428 F. Supp. 258, 264

(N.D. Ill. 1976) (whether embodiment displaced competing products in market relevant to long-felt need); *K-Tec, Inc. v. Vita-Mix Corp.*, 729 F. Supp. 2d 1312, 1326-27 (D. Utah 2010) (documents and testimony concerning customer opinions on needs in the industry and whether products filled needs were evidence relevant to long-felt need); *Henkel Corp. v. Coral, Inc.*, 754 F. Supp. 1280, 1293, 1307 (N.D. Ill. 1990) (customer demand for patented features, and commercial embodiment's displacement of other products in the market and successful sales were relevant to determining a long-felt need existed); *W.L. Gore & Assocs. v. Garlock, Inc.*, 721 F.2d 1540, 1555 (Fed. Cir. 1983) (sales of commercial embodiment considered in determining there was long-felt need); *Mintz*, 679 F.3d at 1379-80 (customer opinions concerning benefits of commercial embodiment, and fact that commercial embodiment had substantial sales and displaced other products in market was relevant evidence of long-felt need).

Further, courts also have considered the same kind of documents and information when determining whether other secondary considerations Plaintiffs have asserted existed. *See, e.g.*, *MeadWestVaco Corp. v. Rexam Beauty & Closures*, 731 F.3d 1258, 1265 (Fed. Cir. 2013) (marketing messages used for commercial embodiment were relevant to whether there was teaching away by the prior art).

Moreover, as explained above, such information could also bear on whether any sales or market share gleaned by Axiron® were due to the alleged patented features, or whether they were due to other aspects of the product, which relates to whether the required nexus exists. For example, if the sales Axiron® has managed to achieve are due to advantages of the active ingredient testosterone, or the fact that it is a topical product, this would rebut any claim that Axiron®'s allegedly unique patented features drove sales or market share. As another example, if Plaintiffs aggressively marketed, advertised, or priced Axiron®, this would also rebut any

claim that any sales were due to a fulfillment of long-felt need or due to alleged patented features.  *See, e.g.*, *Asyst*, 544 F.3d at 1316 (whether sales of commercial embodiment were attributable to patented features was relevant to whether nexus existed to support a long-felt but unmet need); *Ecolochem, Inc. v. Southern Calif. Edison*, No. 92-3436, 1998 WL 1182000, at *35 (C.D. Cal. Sept. 18, 1998) ("the required nexus between the claimed invention and the long-felt need is attenuated by the increased market demand resulting from" reasons unrelated to patented features), *rev'd in part on other grounds*, 227 F.3d 1361 (Fed. Cir. 2000).

Finally, Plaintiffs may continue to argue that they do not intend to rely on the types of discovery Perrigo seeks when seeking to prove a long-felt but unmet need, or any other secondary consideration, and thus that they should not be required to produce such discovery. Not so.  Simply because Plaintiffs do not plan to affirmatively use this information does not make it non-discoverable or irrelevant to secondary considerations.  As this Court has noted:

> Producing only those documents that are deemed helpful to the producing party's litigation position—parsing out the bad from the good—is, of course, impermissible.  A litigant cannot limit its discovery so as to ascribe unto itself the role of judge and jury.

*Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D. 370, 378 (S.D. Ind. 2009); *see also Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 759 (N.D. Ill. 2010) (compelling Plaintiff to produce documents that may be relevant to asserted secondary considerations and nexus even if it did not intend to rely on them).  Indeed, it is precisely because such information would not support their position (and would likely help Perrigo rebut Plaintiffs' assertions of secondary considerations) that Plaintiffs refuse to produce it.  Perrigo is, however, entitled to this discovery.

### C.   Plaintiffs Should Produce Complete Versions Of The IND And NDA Because They Are Relevant To The Validity Of The Patents-In-Suit, Including At Least The Secondary Considerations Plaintiffs Affirmatively Assert.

Plaintiffs refuse to produce a complete, unredacted copy of the IND and NDA for Axiron®, the alleged commercial embodiment of the patents-in-suit.  Plaintiffs argue that the portions of these documents that they have withheld or redacted are not relevant to any issue in this case, and comprise confidential business information.   The withheld portions of these documents are relevant and discoverable, and Plaintiffs' objections concerning confidentiality lack merit given the protective order that the parties have agreed upon in this case.

The IND and NDA are responsive to at least Request For Production Nos. 42 and 43. (Ex. 5 at Request Nos. 42-43).[4]  Much of the information Plaintiffs have redacted or refused to produce appears to relate to the development of Axiron® and its applicator, and testing and other clinical studies performed on Axiron®.  Plaintiffs have asserted that Axiron®, including the applicator used to apply it, embodies the alleged invention of the asserted claims in this case. Thus, according to Plaintiffs, the IND and NDA contain statements and representations made to FDA concerning the alleged invention.  Perrigo is entitled to the statements and representations that Plaintiffs have made describing and characterizing the alleged invention at least because they may be relevant to, including being contradictory to, arguments Plaintiffs put forth in this case or to the U.S. Patent Office while prosecuting the patents-in-suit.  For example, Plaintiffs intend to rely on at least the secondary considerations of unexpected results, long-felt but unresolved need, and teaching away by the prior art, stating that:

> [T]he invention recited in the asserted claims: (1) achieves greater-than-expected penetration through the axilla given the small surface area; (2) maintains normal physiological DHT levels despite relatively high concentrations of 5α-reductase in the axilla;

---

[4] Again, Plaintiffs do not dispute that the IND and NDA are responsive to the discovery requests Perrigo issued.  They only dispute whether complete versions need be produced.

(3) is not affected by the presence of hair and/or cosmetics in the
axilla; (4) does not cause increased sweating or odor in the axilla;
and (5) produces deodorant and antiperspirant effects in the axilla.

\*\*\*

[T]he inventions (1) unexpectedly are able to apply a liquid
composition to a concave area (the axilla) using a concave device;
(2) satisfy the long-felt but unresolved need of accurately applying
a liquid composition when the applicator is tilted; (3) are able to
apply and spread a liquid composition without scraping up the
composition upon application; and (4) have no moving parts and
are easy for a user to operate.

(Ex. 1 at 3-4; Ex. 2 at 4).

Information pertaining to these assertions is likely to be found in the clinical studies and

formulation development information included in the Axiron® IND and NDA.  *See, e.g.*, *Eli

Lilly & Co. v. Wockhardt Ltd.*, No. 08-1547, 2010 WL 2605855, at \*5 (S.D. Ind. June 22, 2010)

(compelling production of documents related to IND as potentially relevant to secondary

considerations).  Whether or not Plaintiffs intend to affirmatively rely on such documents does

not, again, make them any less discoverable, at least because the law simply does not allow

Plaintiffs to produce only discovery they intend to rely upon, and withhold discovery that Perrigo

may be able to use to rebut Plaintiffs' arguments or support its own defenses.  *See, e.g.*, *Novelty*,

265 F.R.D. at 378; *Pfizer*, 731 F. Supp. 2d at 759.

Finally, Plaintiffs' argument that they need not produce the redacted and withheld

portions of the IND and NDA because they contain confidential business information lacks

merit.  There is a protective order—one that Plaintiffs agreed to—that protects Plaintiffs'

commercial interests.  *See Executive Mgmt.*, 2014 WL 4680900, at \*4 (compelling production

over objections that requests sought confidential business information, when a protective order

16

was in place); *Green*, 2014 WL 1631825, at *3 (same); *Maple Creek*, 2012 WL 14022, at *3 (protective order sufficient to keep information nonpublic).

Because the redacted and withheld portions of the IND and NDA are reasonably calculated to lead to the discovery of admissible evidence, and because the agreed-to protective order adequately protects Plaintiffs' interests, Plaintiffs should be compelled to produce this discovery.

**D.    Plaintiffs Have Not Shown, And Cannot Show, That It Would Be Overly Burdensome To Produce The Requested Discovery.**

As set forth above, the discovery Perrigo seeks is relevant, particularly in light of the issues that Plaintiffs themselves elected to inject into the case.  Plaintiffs have the burden of proving that "the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Executive Mgmt.*, 2014 WL 5529895, at *6 (citation omitted).  Plaintiffs' vague allegations that Perrigo's discovery requests are overly burdensome cannot suffice to resist a motion to compel. *See id.* at *6-7.

Plaintiffs must "show with specificity that the request is overly burdensome," and "adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Id.* at *7 (citations and internal quotation marks omitted); *Menendez*, 2010 WL 3038440, at *2-3 (granting motion to compel when Plaintiffs failed to explain how production of requested information was overly burdensome).  Plaintiffs have not even attempted to do so here. Indeed, generalized claims of burden, such as the type Plaintiffs have made here, are entitled to little if any weight, and in fact may be deemed waived.  *See Executive Mgmt.*, 2014 WL 5529895, at *7; *Executive Mgmt.*, 2014 WL 4680900, at *3.

The fact is, Plaintiffs cannot meet their burden here.  Lilly is the NDA holder for Axiron®, and markets and sells Axiron®, the alleged commercial embodiment of the patents-in-suit.  Thus, the vast majority, if not all, of the documents and information Perrigo seeks should be in Lilly's business files relating to Axiron®, and readily accessible.  Thus, producing them should not be so burdensome as to outweigh their relevance to this case.  *See Executive Mgmt.*, 2014 WL 4680900, at *3 (compelling production of discovery over burdensomeness objection when discovery was readily accessible to Plaintiffs); *Donnelly*, 263 F.R.D. at 504 (granting motion to compel despite the time and effort necessary to produce discovery).  Further, the kinds of documents and information Perrigo seeks are routinely produced by patentees/NDA holders in patent cases such as this one, and Lilly is a large, sophisticated company, accustomed to patent litigation, and surely has the resources and know-how to gather and produce relevant documents in large-scale litigation.  *See, e.g.*, *Eli Lilly*, 2010 WL 2605855, at *1, *4 (Plaintiff Lilly employing 67 attorneys to produce approximately 3.5 million pages of documents in patent case, and Court noting "Lilly's demonstrated ample resources").

Because Plaintiffs have not, and cannot, show that producing the requested discovery—discovery in an infringement case Plaintiffs brought, which relates to issues Plaintiffs inserted into this case—is so burdensome so as to avoid production, they cannot defeat Perrigo's motion.

## IV.   CONCLUSION.

For the reasons set forth herein, the discovery Perrigo seeks is relevant, and Plaintiffs' burden in producing it does not outweigh its likely benefit.  Plaintiffs should be compelled to produce documents and information regarding secondary considerations of non-obviousness in response to Interrogatory Nos. 8-11, 13, and 16 and Requests For Production Nos. 1, 3-17, 21-25, and 80.  Plaintiffs should further be compelled to produce a complete version of the IND and NDA for Axiron in response to Requests for Production Nos. 42 and 43.

Dated:  August 11, 2015                    Respectfully Submitted,

                                           By:   ___/s/ *Sally F. Zweig*_____
                                                 Sally F. Zweig, No. 11367-49
                                                 KATZ & KORIN, PC
                                                 334 North Senate Avenue
                                                 Indianapolis, Indiana 46204-1708
                                                 Telephone:  (317) 464-1100
                                                 Facsimile:  (317) 464-1111
                                                 szweig@katzkorin.com

                                                 Christine J. Siwik
                                                 William A. Rakoczy
                                                 Alice L. Riechers
                                                 Gregory A. Duff, No. 24595-06
                                                 RAKOCZY MOLINO MAZZOCHI SIWIK LLP
                                                 6 West Hubbard Street, Suite 500
                                                 Chicago, Illinois  60654
                                                 Telephone:  (312) 527-2157
                                                 Facsimile:  (312) 527-4205
                                                 csiwik@rmmslegal.com
                                                 wrakoczy@rmmslegal.com
                                                 ariechers@rmmslegal.com
                                                 gduff@rmmslegal.com

                                                 *Attorneys for Defendants Perrigo Co. and*
                                                 *Perrigo Israel Pharmaceuticals Ltd.*

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of August, 2015, a copy of the foregoing document was filed electronically, with unredacted exhibits being made available to counsel via e-mail as addressed below.  Notice of this filing will be sent to the following parties by operation of the Court's ECF.  Parties may access this filing through the Court's system.

| | |
|---|---|
| Jan M. Carroll (Pltf/Consol Pltf Lilly/Acrux)<br>Barnes & Thornburg, LLP | jan.carroll@btlaw.com |
| Terri L. Bruksch (Pltf/Consol Pltf Lilly/Acrux)<br>Barnes & Thornburg, LLP | tbruksch@btlaw.com |
| Sally Franklin Zweig (Perrigo)<br>Katz & Korin, PC | szweig@katzkorin.com |
| Gregory A. Duff (Perrigo)<br>Rakoczy Molino Mazzochi Siwik LLP | gduff@rmmslegal.com |
| Christine J. Siwik (Perrigo)<br>Rakoczy Molino Mazzochi Siwik LLP | csiwik@rmmslegal.com |
| William A. Rakoczy (Perrigo)<br>Rakoczy Molino Mazzochi Siwik LLP | wrakoczy@rmmslegal.com |
| Conly S. Wythers (Perrigo)<br>Rakoczy Molino Mazzochi Siwik LLP | cwythers@rmmslegal.com |
| Alice L. Riechers (Perrigo)<br>Rakoczy Molino Mazzochi Siwik LLP | ariechers@rmmslegal.com |
| Robert M. Teigen (Perrigo)<br>Rakoczy Molino Mazzochi Siwik LLP | rteigen@rmmslegal.com |
| Charles E. Lipsey (Pltf/Consol Pltf Lilly/Acrux)<br>Finnegan, Henderson, et al. | charles.lipsey@finnegan.com |
| L. Scott Burwell (Pltf/Consol Pltf Lilly/Acrux)<br>Finnegan, Henderson, et al. | scott.burwell@finnegan.com |
| Alissa K. Lipton (Pltf/Consol Pltf Lilly/Acrux)<br>Finnegan, Henderson, et al. | alissa.lipton@finnegan.com |
| Danielle A. Duszczyszyn (Pltf/Consol Pltf Lilly/Acrux)<br>Finnegan, Henderson, et al. | danielle.duszczyszyn@finnegan.com |
| Laura P. Masurovsky (Pltf/Consol Pltf Lilly/Acrux)<br>Finnegan, Henderson, et al. | laura.masurovsky@finnegan.com |
| Amanda K. Murphy (Pltf/Consol Pltf Lilly/Acrux)<br>Finnegan, Henderson, et al. | amanda.murphy@finnegan.com |
| Manisha A. Desai, Ph.D. (Pltf Lilly)<br>Eli Lilly & Co. | madesai@lilly.com |
| Briana Lynn Clark (Consol Def Watson) | bclark@bgdlegal.com |

| Dan H. Hoang (Consol Def Watson) | dhoang@winston.com |
| James H. Hinshaw (Consol Def Watson) | jhinshaw@bgdlegal.com |
| Kurt A. Mathas (Consol Def Watson) | kmathas@winston.com |
| Michael Keenan Nutter (Consol Def Watson) | mnutter@winston.com |
| Samantha Maxfield Lerner (Consol Def Watson) | slerner@winston.com |
| Oni Harton (Pltf/Consol Pltf Lilly/Acrux) Barnes & Thornburg, LLP | oni.harton@btlaw.com |
| Anthony J. Fitzpatrick (Consol Def Amneal) DUANE MORRIS, LLP | ajfitzpatrick@duanemorris.com |
| Carolyn A. Alenci (Consol Def Amneal) DUANE MORRIS, LLP | caalenci@duanemorris.com |
| Christopher S. Kroon (Consol Def Amneal) DUANE MORRIS, LLP | cskroon@duanemorris.com |
| Robert J. Schuckit (Consol Def Amneal) SCHUCKIT & ASSOCIATES | rschuckit@shuckitlaw.com |
| Vincent L. Capuano (Consol Def Amneal) DUANE MORRIS, LLP | vcapuano@duanemorris.com |

s/ Sally Franklin Zweig
Sally Franklin Zweig

Katz & Korin, PC
334 North Senate Avenue
Indianapolis, Indiana 46204
Office: (317) 464-1100; Fax: (317) 464-1111